**HON. BARBARA J. ROTHSTEIN**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED FINANCIAL CASUALTY COMPANY,<br><br>                      Plaintiff,<br><br>    v.<br><br>AMAN EXPEDITE, LLC; VITALI KONKO; the ESTATE OF DMYTRO PRONIN; MALIK TRUCKS LLC; and MALIK KOSSUNOV<br>                      Defendants,<br><br>AND<br><br>CHAD HORNER, as Administrator or the Estate of Dmytro Pronin,<br>           Crossclaim & Third-Party Plaintiff,<br><br>    v.<br><br>AMAN EXPEDITE LLC; and VITALII KONKO,<br>           Crossclaim Defendants,<br><br>AND<br><br>DAIMLER TRUCKS NORTH AMERICA, LLC; SELECTRANSPORTATION RESOURCES (D/B/A HOUSTON FREIGHTLINER); PITREMODELING INC; RALF AND TRANSPORTATION INC; PETRO FEDELESH; MALIK TRUCKS LLC; MALIK KOSSUNOV; and FORCE TRANS INC,<br><br>           Third-Party Defendants. | NO. 2:23-cv-00587-BJR<br><br>**ORDER GRANTING DAIMLER TRUCKS NORTH AMERICA, LLC'S MOTION FOR PROTECTIVE ORDER AND TO STAY DISCOVERY** |

1

## I. INTRODUCTION

Before the Court is Third-Party Defendant Daimler Trucks North America, LLC's ("DTNA") motion to for a protective order and to stay discovery pursuant to Federal Rule of Civil Procedure 26(c), pending resolution of DTNA's motion to dismiss the Second Amended Third-Party Complaint.[1] Dkt. No. 154. Third-Party Plaintiff Chad Horner as the Administrator of the Estate of Dmytro Pronin ("the Estate") opposes the motion. Dkt. No. 156. Having reviewed the motion, response, and reply thereto, as well as the record of the case and the relevant legal authority, the Court will grant the motion. The reasoning for the Court's decision follows.[2]

## II. FACTUAL BACKGROUND

On October 1, 2022, Dmytro Pronin tragically died when the freightliner he was riding in was involved in a traffic accident. The freightliner was manufactured by DTNA. At the time of the accident, the freightliner was being driven by Defendant Vitalii Konko and Mr. Pronin was riding in a sleeper-birth behind the freightliner's passenger cab. The sleeper-berth was not part of the freightliner as manufactured by DTNA; rather, it was added to the truck by Third-Party Defendant PITRemodeling Inc. after it left DTNA's control and was sold to Defendant and Cross Claim Defendant Aman Expediate, LLC.

---

[1] DNTA's motion to dismiss the Second Amended Third-Party Complaint was filed concurrently with the instant motion.

[2] Plaintiff United Financial Casualty Company ("United Financial") originally instituted this lawsuit in April 2023 seeking a declaratory judgment that it does not owe insurance defense or indemnity coverage obligations for potential claims arising from the accident. However, the lawsuit has since expanded to include multiple cross and third-party claims including, relevant to the instant motion, the Estate's third-party claims against DNTA. The underlying insurance claims are not relevant to the instant motion and will not be discussed here.

2

A. **Order Granting DNTA's Motion to Dismiss First Amended Third-Party Complaint**

On April 29, 2024, the Estate filed a First Amended Third-Party Complaint asserting two claims against DTNA: strict product liability and wrongful death. Dkt. No. 78, First Am. Third-Party Comp. ¶¶ 133-47, 194-99. Both claims rest on the Estate's assertion that the DTNA-manufactured freightliner should have been equipped with automatic emergency braking and/or collision mitigation systems and the fact that it was not equipped with this technology is what caused Mr. Pronin's death. DTNA moved to dismiss the First Amended Third-Party Complaint, arguing that the facts as alleged by the Estate failed to state a claim on which relief can be granted.

This Court agreed with DTNA. The First Amended Third-Party Complaint unequivocally alleged that Mr. Pronin died due to the "shoddy" construction of the sleeper berth that was added to the freightliner after the truck left DNTA's control, as opposed to any defect in the DNTA-manufactured freightliner itself. Specifically, the Estate alleged that the driver, Mr. Konko, who was riding in the passenger safety compartment of the freightliner at the time of the accident "was uninjured" because the compartment "proved more than adequate to remain intact and protect its occupants" during the accident. First Am. Third-Party Comp. at ¶¶ 119, 123. On the other hand, the Estate alleged that Mr. Pronin, who was riding in the sleeper berth at the time of the accident, was "violently thrown" from the truck because the berth was not "crashworth[y]" and further alleged that Mr. Pronin "would likely have remained uninjured or only minorly injured" if the berth had been properly constructed. *Id.* at ¶¶ 121, 124. Thus, per the Estate's own allegations, it was not a defect in the DNTA-manufactured freightliner, itself, that caused Mr. Pronin's death. This is evidenced by the

fact that the Estate alleged that Mr. Konko walked away from the accident unscathed. Rather, it was the fact that Mr. Pronin was riding in a "shoddily" constructed after-market sleeper berth that caused his death. Stated differently, while the Estate alleged that the accident would not have occurred if the freightliner had been equipped with automatic emergency braking and/or collision mitigation systems—an allegation that the Court assumed was true for purposes of the motion to dismiss—it further alleged that the freightliner, as manufactured by DTNA, was more than adequate to protect its occupants from injury during the accident, and Mr. Pronin only died because he was riding in a "[un]crashworthy[y]" sleeper berth that was added to the truck after it left DTNA's control. Thus, the Estate's own allegations established that the "relevant product" under Washington law that caused Mr. Pronin's death was the after-market sleeper berth, not the freightliner itself. And because the Estate further alleged that DNTA did not manufacture or install the sleeper berth that caused Mr. Pronin's death, it failed to state a claim against DNTA on which relief can be granted.

On August 30, 2024, this Court granted DNTA's motion to dismiss the First Amended Third-Party Complaint but granted the Estate's request for leave to amend. Dkt. No. 142, Order Grant Mot. to Dis. On September 18, 2024, the Estate filed a Second Amended Third-Party Complaint. Dkt. No. 149, Sec. Am. Third-Party Comp.

B.    **The Estate's Discovery Request**

On August 21, 2024, one week before this Court granted DNTA's first motion to dismiss, the Estate served DNTA with its First Request for Production in which it requested that DNTA produce "all claims, lawsuits, complaints and/or petitions filed" against DNTA in which "it was alleged in whole or in part, that a Freightliner truck was

defective because it was not equipped with [a] 'Crash Avoidance Safety System'".[1] Dkt. No. 152, Ex. 1, Grant Dec. at 3. On August 29, 2024, the parties also conferred regarding the Initial Disclosures DNTA served on August 26, 2024, including whether DTNA would provide additional documents and information in connection with those disclosures. *Id*.

DNTA alleges that the Estate's Second Amended Third-Party Complaint fails to cure the legal deficiencies identified by this Court in the August 30, 2024 Order dismissing the First Amended Third-Party Complaint. As such, on October 2, 2024, DNTA filed a motion to dismiss the Second Amended Third-Party Complaint and concurrently filed the instant motion for a protective order and to stay discovery, requesting that the Court stay any further discovery efforts until this Court resolves the outstanding motion to dismiss. Dkt. Nos. 153 and 154, respectively. This Court ordered expedited briefing on the motion for a protective order and to stay discovery and the matter is now ripe and ready for this Court's review.

### III.   LEGAL STANDARD

Federal Rules of Civil Procedure 12(c)(1) permits a district court to stay discovery if it presents "an unnecessary burden and expense [to the moving party] before threshold, dispositive issues … [are] resolved." *Clardy v. Gilmore*, 773 Fed. Appx. 958, 959 (9th Cir. 2019) citing Fed. R. Civ. P. 26(c)(1). The Ninth Circuit has noted that staying discovery during the pendency of a Federal Rule 12(b)(6) motion "makes sense" because

---

[1] The Request for Production defines "Crash Avoidance Safety System" as "any frontal Collision Avoidance System, including an Adaptive Cruise Control, Forward Collision Warning, Advanced Driver Assist, Adaptive Braking, Active Brake Assist, Automatic Emergency Braking System, Crash Imminent Braking, Dynamic Brake Support, and/or Cross Traffic Assist System" Dkt. No. 152, Ex 1 at 3.

the purpose of such a motion is "to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("It is sounder practice to determine whether there is any reasonable likelihood that plaintiffs can construct a claim before forcing the parties to undergo the expense of discovery.").

Courts in this district apply a two-part test when determining whether to grant a stay of discovery based on a pending dispositive motion. *Ahern Rentals Inc. v. Mendenhall*, 2020 WL 8678084, *1 (W.D. Wash. July 9, 2020). "First, the pending motion must be dispositive of the entire case, or at least on the issue to which discovery is directed." *Id.* "Second, the court must determine if the pending dispositive motion can be decided without additional discovery." *Id.*

## IV.   DISCUSSION

DNTA argues that staying discovery here is appropriate because if this Court grants its motion to dismiss the Second Amended Third-Party Complaint, doing so will dispose of all of the Estate's claims against DNTA and DNTA will be dismissed from the case. DNTA further argues that the requested discovery is not necessary for this Court to resolve the motion. The Estate counters that this Court should deny DNTA's motion to stay discovery because: (1) DNTA waived its right to object to the requested discovery, (2) DNTA has not established good cause for not responding to the discovery, and (3) the discovery is relevant to the issues underlying the pending motion to dismiss. The Court will address each argument in turn.

### A. DNTA Did Not Waive Its Right to Object to the Discovery

As stated above, the Estate served the disputed discovery requests on DNTA on August 21, 2024. Under Federal Rule 34(b)(2)(A), absent extenuating circumstances, DNTA's objection or response to the discovery was due by September 20, 2024. DNTA did not respond to the discovery and instead filed the instant motion for a protective order and to stay the discovery on October 2, 2024. Therefore, the Estate argues, DNTA failed to timely respond or object to the discovery and has waived its right to do so now.

The Estate is wrong. Per this Court's August 30, 2024 Order, DNTA was dismissed from this lawsuit after it was served with the Estate's discovery requests but before a response was due. Therefore, DNTA was under no obligation to respond to the discovery requests. The fact that the dismissal was without prejudice does not change the fact that this Court's order dismissed DNTA from the lawsuit. *See United States v. State of California*, 932 F.2d 1346, 1351 (9th Cir. 1991) (The Ninth Circuit recognizes that the legal effect of a dismissal without prejudice is "as though the action[] had never been filed"). Indeed, the Court finds the fact that DNTA simply paused the running of the response deadline while it was not a party to the case rather require the Estate to re-serve the discovery on DNTA after the Estate filed the Second Amended Third-Party Complaint, particularly accommodating. Accordingly, this Court concludes that DNTA has not waived its right to object to the discovery.[1]

---

[1] The Estate also appears to argue that DNTA cannot object to the discovery because, during a status conference regarding the parties' initial joint status report, this Court ordered DNTA to respond to the discovery. However, the Court did so before determining that the Estate had failed to state a claim on which relief can be granted. Clearly the Court's later determination voids the Court's earlier ruling.

**B.     DNTA Has Established Good Cause for a Stay of Discovery**

The Estate argues that DNTA is not entitled to the relief if seeks because it has not established that it will experience an "undue burden" if it is required to respond to the discovery request. The Estate misses the point. DNTA does not object to the discovery request because it constitutes an undue burden; it argues that it should not be required to respond to the discovery because if this Court grants its renewed motion to dismiss, doing so will render responding to the discovery unnecessary. This Court agrees with DNTA. When faced with claims that may not survive the pleading stage—such as in this motion—courts in this district focus on whether the movant will be faced with unnecessary burdens and expenses that can be avoided if the case is dismissed. *See New World Medical Inc. v. Micro Surgical Tech. Inc.*, 2021 WL 366106 at * 1 (W.D. Wash. Feb. 3, 2021) ("courts will seek to limit the burden on parties and on itself when there is potential for an action to be dismissed in its entirety); *Bosh v. United States*, 2019 WL 5684162, *1 (W.D. Wash. Nov. 1, 2019) ("A court may relieve a party of the burdens of discovery while a dispositive motion is pending."); *Davis v. Speer*, 2010 WL 4568047, at 1 (W.D. Wash. Nov. 3, 2010) ("[T]he parties should not face the burden and expense of responding to discovery as to claims that may not survive the pleading stage."). There is no dispute that if this Court grants DNTA's renewed motion, DNTA will be dismissed from the case and will be under no obligation to respond to the Estate's discovery request. Therefore, this fact weights in favor of granting the motion to stay discovery.

**C.     The Requested Discovery Is Not Necessary to Resolve the Pending Motion to Dismiss**

As stated above, the Estate's First Request for Production requests that DNTA produce "all claims, lawsuits, complaints and/or petitions filed" against DNTA in which

"it was alleged in whole or in part, that a Freightliner truck was defective because it was not equipped with [a] 'Crash Avoidance Safety System'". Dkt. No. 152, Ex. 1, Grant Dec. at 3. The Estate argues that this discovery is necessary because it will assist it in establishing that DNTA's failure to include such technology in the subject freightliner proximately caused Mr. Pronin's death. Once again, the Estate is mistaken. The unique facts of this case—as pled by the Estate in the First Amended Third-Party Complaint—establish that Mr. Pronin's death cannot reasonably be attributed to the lack of such technology. This is because the facts establish that—again as pled by the Estate (and the truth of which is assumed by the Court at this stage of the litigation)—Mr. Konko walked away uninjured from the same accident while riding in the same freightliner that was not equipped with the safety technology. The only difference is that Mr. Konko was riding in the passenger safety cab while Mr. Pronin was riding in the "shoddily" constructed sleeper berth that was added to the freightliner after it left DNTA's control.

      The Estate argues that evidence of other, similar incidents involving DNTA-manufactured freightliners that lacked crash avoidance technology may be relevant to prove notice, ability to correct known defects, magnitude of danger, or causation. However, as this Court pointed out in the August 30 2024 Order, the First Amended Third-Party was "replete" with allegations that DNTA "understood and acknowledged" that such technology can "dramatically decrease the risk to those who use this country's roadways". Order Grant Mot. to Dis. at 8-9. Adding even more allegations regarding DNTA's understanding of this technology will not cure the Estate's proximate cause pleading deficiencies created by the unique facts of this case.

## V. CONCLUSION

Based on the foregoing, the Court HEREBY GRANTS DNTA's motion for a protective order and to stay discovery pending resolution of DNTA's motion to dismiss the Estate's Second Amended Third-Party Complaint. DNTA is relieved of any obligation to respond to discovery in this matter while its motion to dismiss is pending.

Dated this 30th day of October 2024.

*Barbara J. Rothstein*
Barbara Jacobs Rothstein
U.S. District Court Judge