HON. BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED FINANCIAL CASUALTY COMPANY,<br><br>       Plaintiff,<br><br>v.<br><br>AMAN EXPEDITE, LLC; VITALI KONKO; the ESTATE OF DMYTRO PRONIN; MALIK TRUCKS LLC; and MALIK KOSSUNOV<br><br>       Defendants,<br><br>AND<br><br>CHAD HORNER, as Administrator of the Estate of Dmytro Pronin,<br>   Crossclaim & Third-Party Plaintiff,<br><br>v.<br><br>AMAN EXPEDITE LLC; and VITALII KONKO,<br>   Crossclaim Defendants,<br><br>AND<br><br>DAIMLER TRUCKS NORTH AMERICA, LLC; SELECTRANSPORTATION RESOURCES (D/B/A HOUSTON FREIGHTLINER); PITREMODELING INC; RALF AND TRANSPORTATION INC; PETRO FEDELESH; MALIK TRUCKS LLC; MALIK KOSSUNOV; and FORCE TRANS INC,<br><br>   Third-Party Defendants. | NO. 2:23-cv-00587-BJR<br><br>**ORDER DENYING DAIMLER TRUCKS NORTH AMERICA, LLC'S MOTION TO DISMISS THE ESTATE'S SECOND AMENDED THIRD-PARTY COMPLAINT** |

1

## I. INTRODUCTION

On October 1, 2022, Vitalii Konko and Dmytro Pronin were driving a load of goods on Interstate 70 near Silverthorne, Colorado in a freightliner box truck ("the truck") that was manufactured by Daimler Trucks North America, LLC ("DTNA"). Mr. Konko was driving the truck and Mr. Pronin was riding in a sleeper berth that had been added to the truck after it was purchased from DTNA. At around noon that day, Mr. Konko accidentally rear-ended a semi-truck that was also driving on Interstate 70. Mr. Konko was not injured in the accident, but the sleeper berth was destroyed in the impact and Mr. Pronin died.

Plaintiff United Financial Casualty Company originally instituted this lawsuit in April 2023 seeking a declaratory judgment that it does not owe insurance defense or indemnity coverage obligations for potential claims arising from the accident.[1] However, the lawsuit has since expanded to include multiple cross and third-party claims brought by Chad Horner, as the Administrator of the Estate of Dmytro Pronin ("the Estate"), against several individuals and entities, including relevant to this motion, third-party claims for negligence and strict liability against DTNA. Currently before the Court is DTNA's motion to dismiss with prejudice the claims asserted against it, which the Estate opposes. Having reviewed the motion, response, and reply thereto, as well as the record of the case and the relevant legal authority, the Court will deny the motion. The reasoning for the Court's decision follows.

---

[1] The underlying insurance claims are not relevant to the instant motion and will not be discussed here.

## II. PROCEDURAL HISTORY

As stated above, the Estate has filed multiple claims against multiple parties, including, but not limited to, Mr. Konko, the company that owned the truck, the company that installed the sleeper berth in the truck, and DTNA. Relevant to the instant motion, the Estate alleges that the truck was defective because it was not equipped with crash avoidance technology such as automatic braking and that, but for the lack of this technology, the accident would not have occurred, and Mr. Pronin would not have died. As such, the Estate brings third-party negligence and strict liability claims against DTNA as the truck's manufacturer.

In June 2024, DTNA moved to dismiss the claims against it, arguing that the Estate had failed to plausibly allege that its product—the truck—was the proximate cause of Mr. Pronin's death. DTNA argued that the Estate's own allegations in the third-party complaint established that even if the accident would not have happened but for the fact that the truck was not equipped with crash avoidance technology, the truck, as it existed at the time it left DTNA's control, was more than adequate to protect its occupants in the type of accident that occurred here. DTNA pointed out that according to the Estate's allegations the truck's passenger safety compartment where Mr. Pronin would have been riding if a sleeper berth had not been added to the truck was not damaged in the accident and that it proved more than adequate to protect its occupants. Indeed, the Estate specifically claimed that the truck's performance in the accident proved that passenger safety compartments are sufficient to protect passengers from injuries in these types of accidents. The Estate contrasted this with the sleeper berth's performance in the accident—alleging that it was "completely destroyed", that Mr. Pronin was violently

thrown from the truck "especially" because of the berth's lack of crashworthiness, and that Mr. Pronin would have likely been "uninjured or only minorly injured" in the accident if the sleeper berth had been crashworthy. Dkt. No. 78 First Amend. Third-Party Comp. at ¶¶ 120-121, 124. Thus, DTNA argued, the Estate's own allegations established that Mr. Pronin would not have been injured in the accident if he had been riding in the truck's passenger safety compartment and that the only reason he died in the accident is because he was riding in the poorly constructed sleeper berth, something that was added to the truck after it left DTNA's control. Therefore, DTNA argued that the claims against it must be dismissed because the Estate could not plausibly allege that its product was the proximate cause of Mr. Pronin's death.

This Court agreed with DTNA and in August 2024, granted DTNA's motion to dismiss but also granted the Estate's request for leave to amend its third-party complaint, which the Estate did in September 2024. The newly amended third-party complaint paints a significantly different picture of the accident. While the Estate still alleges that the sleeper berth was poorly constructed and not crashworthy, it also now alleges that the truck, itself, suffered significant damage in the accident and that Mr. Pronin would have been injured in the accident regardless of where he was sitting in the truck. For the reasons discussed below, this Court concludes that with these newly amended claims, the Estate has now plausibly alleged that the truck as it existed at the time it left DTNA's control was defective, was not sufficient to protect its occupants in this accident, and as such, was a contributing factor in Mr. Pronin's death.

### III.    FACTUAL BACKGROUND[2]

A.    **DTNA Manufactured the Truck**

As stated above, DTNA designed and manufactured the truck that is the subject of this litigation. The truck was purchased by Third-Party Defendant SelecTransportation Resources, LLC d/b/a/ Houston Freightliner, Inc. ("Houston Freightliner") and sold to Defendant and Crossclaim Defendant Aman Expedite, LLC ("Aman Expedite"). The Estate alleges that DTNA had been offering forward collision warning, automatic emergency braking, and active brake assist technologies (collectively "crash avoidance technology") in its vehicles since 2007 and that this technology could detect impending collisions, "warn the driver and, if the driver takes no action, automatically apply the vehicle's brakes to avoid or mitigate the severity of the collision." Dkt. No. 149 Estate of Dmytro Pronin's Answer to the Amended Complaint for Declaratory Relief; Crossclaims; and Second Amended Third-Party Complaint ("Sec. Amend. Third-Party Comp.") at ¶¶ 20, 25. According to the Estate, DTNA claims that this crash avoidance technology can reduce rear-end collisions by over seventy percent. ¶ 31. The Estate further alleges that despite knowing that this technology can significantly reduce the number and severity of accidents in which its vehicles are involved, DTNA did not make the technology standard on the type of truck that was involved in the accident in this case. ¶ 35. Instead, the technology is only offered as optional equipment and the truck that Mr. Pronin was riding in was not equipped with this technology. ¶ 37.

---

[2] The foregoing factual allegations are set forth in the Second Amended Third-Party Complaint, which differs significantly from the First Amended Third-Party Complaint on which DTNA's first motion to dismiss was based. DTNA objects to a number of these differences, which the Court addresses in the analysis section of this order.

### B. PIT Installs a Sleeper Berth in the Truck

In August 2021, after it purchased the truck from Houston Freightliner, Aman Expedite contracted with Third-Party Defendant Petro Fedelesh, PITRemondeling Inc, and/or Ralf and Transportation Inc. (collectively "PIT") to construct a sleeper berth in the back of the truck. Sec. Amend Third-Party Comp. at ¶ 110. According to the Estate, PIT understood "that the sleeper berth would only be used for overnight camping, not [for] sleeping while the [truck] was in motion." ¶ 114. The Estate further alleges that the sleeper berth's "design was not reasonably safe, [] was defective, and [] not crashworthy." ¶ 118.

### C. The Accident

On October 1, 2022, Mr. Konko was driving the truck while Mr. Pronin was riding in the sleeper berth. Sec. Amend. Comp. ¶¶ 144, 141. Mr. Konko was driving around 50-55 mph when he rear-ended a semi-truck in the lane in front of him that was going very slowly. ¶ 147. The Estate alleges in its amended complaint that the right side of the truck impacted the trailer of the semi-truck and the "right front passenger side [of the truck] was torn open and the passenger's side windscreen, and door were heavily damaged." ¶¶ 159-160. The Estate presents photographic evidence of the damage. ¶ 160. The Estate further alleges that the impact from the accident "would have injured Mr. Pronin wherever he was sitting and regardless of whether he was wearing a seatbelt." ¶ 162. The Estate claims that Mr. Pronin was "violently thrown from the vehicle" "[a]s a result of the impact" and "pronounced dead at the scene." ¶¶ 167-168. Lastly, the Estate claims that this accident would not have happened if the truck had been equipped with crash avoidance technology. ¶ 174.

### III. STANDARD OF REVIEW

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must state a cognizable theory, and must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In considering a motion to dismiss, the Court must take all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

### IV. DISCUSSION

As stated above, the Estate has fundamentally changed its description of the accident that led to Mr. Pronin's death. Previously, the Estate had alleged that the impact from the accident was not particularly violent, that the truck's passenger safety compartment was adequately designed to protect its occupants in this type of accident as evidenced by the fact that the impact from the accident did not cause any intrusion into the truck's cab and Mr. Konko walked away from the accident uninjured, and that Mr. Pronin likely would have been uninjured if the sleeper berth had been properly constructed. First Amend Comp. Third-Party Comp. ¶¶ 117-119, 123-124. Based on these allegations, the Court concluded that the third-party complaint failed to plausibly allege that a product designed and/or manufactured by DTNA was the proximate cause of Mr. Pronin's death because the Estate's allegations established that the truck—as it existed at the time it left DTNA's control—was more than adequate to protect its occupants in this particular accident.

However, the Estate now alleges—and presents photographic evidence—that the truck, as designed by DTNA, was not sufficient to protect its occupants in this accident and that, in fact, the impact from the accident significantly damaged the passenger side of the truck. The Estate further alleges that the impact of the accident would have injured Mr. Pronin no matter where he was sitting in the truck and, as such, the lack of crash avoidance technology on the truck was a contributing factor in Mr. Pronin's death Sec. Amend. Third-Party Comp. ¶¶ 160-162, 169.

DTNA raises three objections to the newly amended third-party complaint. First, it argues that the Estate attempts to improperly amend the third-party complaint by simply omitting key facts from the prior version that it no longer likes. Second, it claims that the Estate attempts to improperly amend the third-party complaint with factual assertions that contradict prior allegations without offering a credible basis for doing so. Third, DTNA argues that this Court must reject the Estate's new allegations that are "purely unsubstantiated hypotheticals". DTNA argues that if these improper pleading strategies are rejected by the Court, the allegations against it remain deficient and all claims against it must be dismissed with prejudice.

### A. Previously Alleged Facts that Are Omitted from the Newly Amended Third-Party Complaint

DTNA argues that the Estate attempts to avoid dismissal this time around by simply "omitting key facts" that this Court relied on in its prior decision. Dkt. No. 150, Second Mot. to Dismiss at 8. Specifically, DTNA points out that the Estate omits the following previously alleged factual allegations from the most recent iteration of the third-party complaint:

- Mr. Konko was uninjured in the accident;

- The impact of the accident was not particularly violent;
- Details regarding the sleeper berth's poor construction including that it was constructed "below industry standards", out of wood, and without steel reinforcements to keep it connected to the passenger safety compartment;
- The sleeper berth was "completely destroyed" in the accident; and
- Mr. Pronin was violently thrown from the truck especially because of the berth's lack of crashworthiness.

*Id.* at 8-9. DTNA argues that because the Estate simply omitted these allegations as opposed to amending them, the omitted allegations are judicial admissions that remain binding on the Estate. DTNA is correct. "Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988); *see also*, *In re Fordson Engineering Corp.*, 25 B.R. 506, 509 (Bankr. E.D. Mich. 1982) ("Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."). With respect to the first four of the foregoing factual allegations, the Court agrees with DTNA that the Estate simply omitted or significantly diluted the allegations without amending them. As such, the Estate's prior allegations that Mr. Konko was uninjured in the accident, that the impact of the accident was not particularly violent, and that Mr. Pronin was riding in a poorly constructed sleeper berth that was "completely destroyed" in the accident constitute judicial admissions and remain binding on the Estate. *American Title Ins. Co.*, 861 F.2d at 226 ("A statement in a complaint…is a judicial admission[.]"). However, the Court finds that the Estate did amend rather than simply delete the fifth factual allegation, so the Court does not consider this allegation a

judicial admission that is binding on the Estate.[3] Nevertheless, for the reasons set forth below, even if the Court takes judicial notice of the that that Mr. Konko was uninjured in the accident, that the impact of the accident was not particularly violent, and that the sleeper berth was destroyed in the accident, it still concludes that the Estate has plausibly alleged that truck was a contributing factor to Mr. Pronin's death.

### B. Newly Asserted Factual Allegations that Contradict Prior Alleged Allegations

Next DTNA argues that the Estate should not be permitted to amend the third-party complaint with allegations regarding damage that the truck allegedly sustained in the accident separate from the damage to the sleeper berth. DTNA points out that the Estate had previously alleged that the truck's passenger safety compartment was not damaged during the accident and proved adequate to protect its occupants, but now the Estate alleges that the passenger side of the truck sustained significant damage and that Mr. Pronin would have been injured no matter where he was sitting in the truck. DTNA argues that this Court should disregard these new contradictory allegations because the Estate does not offer a "credible explanation or good reason for the contradiction, and the allegations are entirely without plausible factual basis." Sec. Mot. to Dismiss at 10.

The Estate counters that it became aware of the physical damage to the truck after it conducted a "closer scrutiny of the physical evidence" and provides photographic evidence of the damage. Dkt. No. 158 The Estate's Response in Opposition to Defendant DTNA's Motion to Dismiss with Prejudice ("The Estate's Opp.") at 3; Sec. Amend

---

[3] As discussed *infra* in Section IV. B., the Estate now alleges that Mr. Pronin would have been injured no matter where he was sitting in the truck due to the damage it sustained in the accident. The Court finds that this new allegation at least partially amends the Estate's prior allegation that Mr. Pronin was thrown from the truck "especially" because of the sleeper berth's poor construction.

Third-Party Comp. ¶ 160. While it would have been preferable for this closer examination of the evidence to have occurred before the Estate filed the third-party complaint (and before the Court expended judicial resources to resolve DTNA's first motion to dismiss), nevertheless, the Estate is entitled to amend the third-party complaint to reflect its interpretation of this newly discovered evidence. *See*, *e.g.*, *PAE Government Services, Inc. v. MPRI, Inc.*, 514 F.3d 856, 858-9 (9th Cir. 2007) (noting that parties frequently learn more about the facts of a case after the complaint is filed and once they learn more about the available evidence, they often must amend the complaint. "We do not call this process sham pleading; we call it litigation.").

**C.      Newly Alleged Facts that Are "Purely Unsubstantiated Hypotheticals"**

DTNA also argues that this Court must reject the Estate's "speculative allegations that Mr. Pronin *would have* been injured [in the accident] if he had been sitting in the passenger cab or *wherever* he has sitting" because these allegations are "purely unsubstantiated hypotheticals" that "blatantly contradict the ***true fact*** that Mr. Pronin was riding in the after-market sleeper berth at the time of the collision." Sec. Mot. to Dismiss at 12-13 (italics and bold in original). DTNA is correct that this Court need not accept as true allegations that are "conclusory, unwarranted deductions of fact, or unreasonable inferences", *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), and if the Estate was asking this Court to assume that Mr. Pronin was riding anywhere else in the truck other than the sleeper berth, that would be an unacceptable stretch of federal pleading rules. But that is not the only way to read the Estate's new allegations. Previously the Estate had alleged that the accident caused minimal damage to the truck apart from the sleeper berth, and as such, Mr. Pronin was only injured because he was

11

riding in the sleeper berth, a product DTNA did not manufacture. Now the Estate alleges that there was significant damage to the truck separate from the sleeper berth and therefore Mr. Pronin would have been injured no matter where he was sitting in the truck. The Estate further alleges that the damage to the truck would have been avoided if it had been equipped with crash avoidance technology. These new allegations, coupled with the photographic evidence, are sufficient to plausibly allege that the lack of crash avoidance technology in the truck was a contributing cause of Mr. Pronin's death. *See Simon v. Hartford Life, Ins.*, 546 F.3d 661, 663-64 (9th Cir. 2008) (on a motion to dismiss for failure to state a claim, "[a]ll allegations of material fact shall be taken as true and construed in the light most favorable to the nonmoving party"). Thus, the Estate's third-party negligence and strict liability claims against DTNA survive Federal Rule 12(b)(6) dismissal. *See Sprewell*, 266 F.3d at 988 ("A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.").

## V.    CONCLUSION

For the foregoing reasons, the Court HEREBY DENIES DTNA's motion to dismiss the claims against it with prejudice [Dkt. No. 150].

Dated this 16th day of December 2024.

Barbara Jacobs Rothstein
U.S. District Court Judge